852 So.2d 416 (2003)
SARDON FOUNDATION, Appellant,
v.
NEW HORIZONS SERVICE DOGS, INC., Appellee.
No. 5D02-2057.
District Court of Appeal of Florida, Fifth District.
August 22, 2003.
*417 Howard L. Cauvel of Rano, Cauvel & Ceely, P.A., DeLand, for Appellant.
Richard J. D'Amico, Daytona Beach, for Appellee.
SHARP, W., J.,
The Sardon Foundation appeals from a final judgment denying its claim to foreclose a mortgage executed by New Horizons Service Dogs, Inc. and awarding New Horizons attorney's fees pursuant to the mortgage and note. On appeal, Sardon argues the trial court should have considered a separate agreement executed by the parties as part of the mortgage. The agreement provides for forgiveness of the debt and specifies additional reasons for default under the mortgage.
We conclude the agreement, mortgage and note were meant to be read together and control the relationship of the parties, and thus should have been considered by the trial court without requiring Sardon to *418 bring a separate breach of contract claim. We also conclude New Horizons waived its claim for attorney's fees by failing to plead entitlement to those fees. Accordingly, we reverse the judgment and remand with directions to strike the award of attorney's fees and to try the foreclosure action on the merits using the alleged breach of the agreement (New Horizons' alleged failure to render proper accountings), as the ground to foreclose.
Sardon is a New Mexico non-profit corporation established by Don Sontag to provide financial support for working dogs. Such dogs are used for search and rescue operations and as guide dogs. New Horizons is a Florida non-profit organization operated by Janet Severt, which provides service dogs to disabled individuals. The two met at an American Kennel Club Dog Obedience show.
Sontag suggested to Severt that he might provide funding for New Horizons through Sardon. Severt presented him with a funding proposal which greatly impressed him. The proposal outlined how the requested funds would be used, delineated the staff and described the purpose of the organization and suggested how it could be improved through the requested funding.
The parties agreed Sontag would give Severt $15,000 quarterly. However, the first advance was for $27,000 to enable Severt, herself a disabled individual, to purchase an electric wheelchair. Later, Severt requested increased funding for a larger facility.
In December 1999, Sontag loaned Severt $140,000 to purchase property in Volusia County. Severt executed a promissary note and a mortgage on the property securing payment of the note. According to Sontag, Severt did not want the loan to be personal so the agreement was changed to their respective corporations. The amount of the loan was also increased to $149,000.
On January 31, 2000, Sontag and Severt finalized their agreements: Sardon would loan New Horizons $149,000.00 to fund the purchase of the property and New Horizons would execute a note and mortgage securing repayment of the loan to Sardon. They also executed an additional agreement which provides:
1. Sardon shall make a loan to New Horizons in the amount of One Hundred Forty-Nine Thousand Dollars ($149,000.00), subject to the terms, conditions and restrictions specified below.... New Horizons will execute the Promissory Note and Mortgage securing its repayment obligations to Sardon. Sardon intends and agrees to forgive Twenty-Nine Thousand Eight Hundred Dollars ($29,800.00) or more of the principal each year (on February 1st), plus all accrued interest on the Promissory Note, in the event New Horizons complies with the restrictions, terms and conditions specified below.
* * *
5. Sardon desires to ensure that New Horizons will continue to be operated in a professional and efficient manner. As a condition of the aforementioned loan to New Horizons, Sardon requires and New Horizons agrees to the following restrictions, requirements and obligations:
a. To provide to Sardon on the fifth day of each month following the execution of this Agreement a complete statement of all receipts and expenditures and a description of all activities, plans and goals of New Horizons for the preceding calendar month.

*419 b. New Horizons shall continue to be operated in a professional, competent and efficient manner pursuant to the highest possible standards, in accordance with the standards of A.D.I.
6. In the event any one of more of the above-described restrictions, requirements and obligations of New Horizons is not fulfilled, in the sole and absolute discretion of Sardon, and continues for a cumulative period of six (6) months, Sardon may demand full payment of the remaining balance due, including all accrued interest, on the Promissory Note. In the event New Horizons does not pay the balance due, including all accrued interest, on the Promissory Note within thirty (30) days of the receipt of such notice to pay, New Horizons will execute a Deed in Lieu of Foreclosure transferring the Property back to Sardon. In the event New Horizons fails to execute the Deed in Lieu of Foreclosure, Sardon may bring a legal action to force New Horizons to execute the Deed in Lieu of Foreclosure or proceed to initiate foreclosure proceedings.
The note, mortgage and agreement were duly executed by Sardon and New Horizons and the mortgage was recorded. Six months later, Sardon filed this mortgage foreclosure action against New Horizons. Sardon alleged New Horizons defaulted under the note and mortgage by failing to provide monthly statements of business and activities and failing to conduct its activities in accordance with paragraph five of the parties' agreement. Sardon attached copies of the note, mortgage and agreement to its complaint.
At trial, Sontag testified the note, mortgage and agreement were all signed at the same time and the agreement specifically referred to the note and mortgage. As quoted above, the agreement forgives the mortgage payments if certain requirements (paragraphs 5a and b) are met. Sontag has not received any payments under the note and mortgage.
Sontag testified he received reports monthly from Severt but found them inadequate because they were not verifiable and were too general and sketchy. Sontag sent Severt letters asking her to improve the reports but to no avail. Sontag filed suit immediately after the six-month time period set forth in paragraph six of the agreement, to establish default under paragraph five, had occurred.
Sontag acknowledged that paragraph five does not specify any form for New Horizons' required statement of receipts and expenditures, and the word "verifiable" is not in the agreement. However, he testified he discussed with Severt that he wanted verifiable reports at every opportunity. When asked whether these discussions occurred before the agreement was signed, defense counsel objected. The judge sustained the objection on the basis it was outside the written documents.
Sardon also called a certified public accountant in an attempt to establish what would be reasonably expected in a donor/donee relationship in terms of reporting month-to-month expenditures and receipts. Defense counsel objected on the basis the accountant's opinion was irrelevant because the agreement did not state the reports had to be made with generally acceptable accounting measures or procedures. Again, the judge sustained the objection "as to the documents before the court." Sardon attempted to question the accountant about reasonable accounting practices in the community for foundations making grants to § 501c.3. corporations *420 but defense counsel's objection to this line of questioning was sustained.
In response to these objections, Sardon argued the note, mortgage and agreement should be considered by the court as a single document relating to a single transaction. The judge apparently concluded Sardon was required to file a separate count for breach of the agreement and ultimately entered judgment in favor of New Horizons.
Where other instruments are executed contemporaneously with a mortgage and are part of the same transaction, the mortgage may be modified by these other instruments. All the documents should be read together to determine and give effect to the intention of the parties. Boyette v. Carden, 347 So.2d 759 (Fla. 1st DCA 1977). The primary rule of construction of a mortgage is to ascertain the intention of the parties. This can be accomplished not only from the face of the instrument but also from the situation of the parties and the nature and object of the transaction. Huntington Nat'l Bk. v. Merrill Lynch Credit Corp., 779 So.2d 396 (Fla. 2d DCA 2000); Boyette.
Here the mortgage, note and agreement were all executed on the same day by the parties and involved the same transaction. In the note, New Horizons agreed to pay $29,800 each February until the loan was paid in full. In the mortgage, New Horizons agreed to pay the principal and interest provided for in the note when due. However, in the agreement, Sardon agreed to forgive the payment of $29,800 each year if New Horizons met the two requirements set forth in the agreement: 1) provide a statement of receipts and expenditures and a description of activities, and 2) continue to operate in a professional manner.
In its complaint, Sardon alleged a default under the note and mortgage caused by New Horizons' failure to comply with the requirements set forth in the agreement. As Sardon points out, there is no basis to forgive the yearly payment unless New Horizons complies with the requirements in the parties' agreement. In order to avoid a default, New Horizons must make the yearly payment (apparently it lacks the financial resources to do so) or comply with paragraph five of the agreement. In sum, the agreement plays an essential role in the transaction, and thus the court should have considered the terms of that agreement, along with the note and mortgage.
On remand, the trial court must attempt to ascertain the intentions of the parties to this transaction in defining the terms of the agreement, to determine if a default has occurred. If the agreement is deemed ambiguous, parol evidence, including the conduct of the parties in their course of dealings, would be admissible to ascertain the parties' true intent. Brevard County Fair Ass'n, Inc. v. Cocoa Expo, Inc., 832 So.2d 147 (Fla. 5th DCA 2002). In addition, testimony from experts as to common business practices, requirements, and dealings between foundations and grantees (§ 501c.3.corporations), would also be relevant to assist the trial court in interpreting the meaning of the terms used in the agreement. See NCP Lake Power, Inc. v. Florida Power Corp., 781 So.2d 531 (Fla. 5th DCA 2001); D.G.D., Inc. v. Berkowitz, 605 So.2d 496 (Fla. 3d DCA 1992); Southeast Banks Trust Co., N.A. v. Higginbotham Chevrolet-Oldsmobile, Inc., 445 So.2d 347 (Fla. 5th DCA 1984); 17A Am.Jur.2d Contracts § 336, 364 (2d ed. May 2003); 21A Am.Jur.2d Customs and Usages §§ 22, 31, 35, 38 (2d ed. May 2003).
*421 As to the award of attorney's fees, we reverse on the additional ground that New Horizons waived its entitlement to those fees, by failing to file a pleading requesting them. It is now clearly established that a claim for attorney's fees, whether based on statute or contract, must be pled. Caufield v. Cantele, 837 So.2d 371 (Fla.2002); Stockman v. Downs, 573 So.2d 835 (Fla.1991).
The purpose of the pleading requirement is noticeby pleading a claim to attorney's fees, a party notifies the opposing party of the claim and prevents unfair surprise. The existence or nonexistence of a claim for attorney's fees may often affect the decision whether to pursue, dismiss or settle a claim. For these reasons, a party may not recover attorney's fees unless he has put the issue into play by filing a pleading seeking fees. If not pled, the claim for attorney's fees is waived. Caufield; Green v. Sun Harbor Homeowners' Ass'n, Inc., 730 So.2d 1261 (Fla.1998); Stockman.
In this case, Sardon filed its mortgage foreclosure complaint in August 2000. In January 2001, New Horizons filed its answer but did not include a claim for attorney's fees in that pleading. New Horizon never requested fees until its motion for attorney's fees, filed a year later in January 2002.
A motion is not a pleading. Green; Heartland Fertilizer Co. v. Carpenter, 827 So.2d 1103 (Fla. 2d DCA 2002). Since New Horizons never filed a pleading containing a request for attorney's fees, New Horizons failed to plead entitlement to attorney's fees and thus waived any claim it had for attorney's fees. Heartland Fertilizer.
New Horizons, however, claims Sardon waived any objection to its lack of pleading. In Stockman, the Florida Supreme Court held that where a party has notice that an opponent claims entitlement to fees, and by its conduct recognizes or acquiesces to that claim or otherwise fails to object to the failure to plead entitlement, that party waives any objection to the failure to plead. Stockman, 573 So.2d at 838. New Horizons argues this exception is applicable here because the mortgage and note contain attorney's fees provisions and Sardon never objected to its motion for attorney's fees.
We rejected a similar argument in Taylor v. T.R. Properties, Inc. of Winter Park, 603 So.2d 1380 (Fla. 5th DCA 1992). In that case, Taylor filed a mechanic's lien foreclosure action against the owner of a construction site and various other lien holders, including Croson. Croson answered the complaint, alleging priority of its lien but did not request attorney's fees. Croson later amended its answer and again failed to request attorney's fees. Several months later, Croson filed a motion for summary judgment which included a request for attorney's fees. The trial court held Croson was entitled to priority over Taylor's claim and awarded attorney's fees to Croson.
On appeal, we reversed the award of attorney's fees because Croson failed to request attorney's fees in its pleadings. We also held the exception in Stockman did not apply:
The record in the instant case does not reflect any waiver by Taylor of Croson's failure to include a demand for attorney's fees in its answer, nor does it reflect any consent on Taylor's part that would lull Croson into believing that it would be awarded attorney's fees at some point in the litigation. The first time Croson asked for the fees was in its motion for summary judgment, and there is no requirement in the Florida Rules of Civil Procedure that would require Taylor to respond in any way to *422 that demand prior to the hearing on the motion. Rule 1.510, Florida Rules of Civil Procedure, provides for the serving of opposing affidavits prior to the day of the hearing on the motion, but a review of the records does not indicate any were required in the instant case on the issues of attorney's fees. It would have assisted this court in reviewing this matter if Taylor had moved to strike, pursuant to rule 1.150, Florida Rules of Civil Procedure, that part of the motion for summary judgment that requested the fees, but he was not burdened by such a requirement.
603 So.2d at 1381. See also Precision Tune Auto Care, Inc. v. Radcliffe, 815 So.2d 708 (Fla. 4th DCA 2002) (plaintiffs were not entitled to attorney's fees where they failed to plead entitlement in their complaint; plaintiffs cannot avoid this obligation and shift the burden to the defendant by filing a motion for attorney's fees two weeks before trial and then arguing defendant waived any objection by not obtaining a ruling from the court).
REVERSED and REMANDED; Award of Attorney's Fees STRICKEN.
PETERSON and PALMER, JJ., concur.