895 So.2d 1097 (2004)
Haroldo J. MONTEALEGRE, Appellant,
v.
BANCO DE CREDITO CENTRO-AMERICANO, S.A., Lafise Bank Limited, and Roberto Zamora, Appellee.
Nos. 3D03-3299, 3D03-2525.
District Court of Appeal of Florida, Third District.
December 22, 2004.
Rehearing and Rehearing Denied April 8, 2005.
*1098 Greenberg Traurig, P.A., and Elliot H. Scherker, Elliot B. Kula, and Lisa L. Jama, Miami, for appellant.
Aragon, Burlington, Weil, Schwiep, Kaplan & Blonsky, P.A., and Ronald P. Weil and Kevin C. Kaplan, Miami, for appellee.
Before SCHWARTZ, C.J., and WELLS and SHEPHERD, JJ.
Rehearing and Rehearing En Banc Denied April 8, 2005.
SHEPHERD, J.
Haroldo J. Montealegre, plaintiff below, appeals a final summary judgment in favor of the defendants, Banco de Credito Centroamericano, S.A., Lafise Bank Limited and Roberto Zamora. Upon review, we conclude that there remains a genuine issue of material fact which precludes entry of summary judgment in this case. See Collections, U.S.A. v. City of Homestead, 816 So.2d 1225 (Fla. 3d DCA 2002).
The disputed writing is a one-page, handwritten document executed in the post-dinner glow of a local eatery.[1] According to a certified translation, the disputed language within the writing provides: "Bancentro NIC purchases 60% of the shares of Mr. Haroldo Montealegre in Banco Mercantil, at the price of U.S. $5,900,000." On the evening the agreement was signed, Montealegre owned in his own name only 1,540 shares of Banco Mercantil. There is no dispute that a purchase price of $5,900,000 would be an absurd purchase price for those few shares.[2] Montealegre's position is that both parties understood that he was selling 60% of "his" shares in Banco Mercantil that he either owned directly in his own name or controlled indirectly through family members and holding companies.[3] Indeed, on the agreed closing date for the transaction, Montealegre appeared at the appointed location prepared to convey 22,800 Mercantil shares, which he avers constituted 60% of the shares owned either directly or indirectly by him. At the hearing on the motion for summary judgment, the bank's counsel argued that the intent of the parties was that Bancentro was to receive 60% of the total shares of Banco Mercantil, and that it was understood at the time of the signing of the agreement *1099 that Montealegre had personal ownership of the shares; but because the express language of the agreement, as Bancentro sees it, unambiguously contradicts the actual agreement of the parties as to shares to be conveyed, the contract is fatally void.[4] Appellees have also counterclaimed to rescind the agreement, if one exists, on the grounds that they were defrauded into entering into the contract because Montealegre misrepresented what he owned.
The circuit court granted summary judgment in favor of the defendants because "the purported contract is so ambiguous[5] as to be totally unenforceable." Although at first blush, it might appear that the contract is unambiguous, we believe that as drafted by these two businessmen, it is sufficiently definite to be enforceable, but also fairly susceptible to two different interpretations: first, as Montealegre would read it, "Bancentro NIC purchases 60% of the shares [ ] Mr. Haroldo Montealegre [owns or controls] in Banco Mercantil" or, as the bank would prefer, "Bancentro NIC purchases [the] 60% of the shares Harold Montealegre [owns or controls] in Banco Mercantil."[6] Accordingly, we conclude that the facts presented indicate that there was a meeting of the minds between Montealegre and Zamora (acting as the bank's agent) and, while the precise terms of their agreement are now disputed, such meeting of the minds precluded summary judgment. Miller v. Kase, 789 So.2d 1095, 1097-99 (Fla. 4th DCA 2001) ("where [a] contract is susceptible of two different interpretations, each one of which is reasonably inferred from the terms of the contract, the agreement is ambiguous"); S & T Anchorage, Inc. v. Lewis, 575 So.2d 696, 699 (Fla. 3d DCA 1991) ("Where the terms of the instrument are ambiguous, casting doubt upon the intent of the parties, this intent must be determined by the trier of fact, and is not to be determined upon a motion for summary judgment."); Coast Cities Coaches, Inc. v. Whyte, 102 So.2d 848 (Fla. 3d DCA 1958) ("The question of what the parties intended by the use of the questioned words resolved itself into a mixed question of fact and law").[7] In reaching this conclusion we express no opinion as to the merits of this litigation.
Accordingly, we reverse the order of the circuit court granting summary judgment awarded appellees on Montealegre's breach of contract action, vacate the summary judgment awarded appellees below on their counter-claim for breach of a promissory note, and remand for further proceedings.
Reversed.
NOTES
[1] Montealegre and Zamora were present at the dinner and no one disputes that Zamora was serving as Bancentro's agent.
[2] The purchase price also entailed the forgiveness of a $300,000 promissory note that Montealegre had given to Bancentro. In granting appellees' motion for summary judgment on the complaint, the trial court also granted summary judgment on Bancentro's counterclaim on the note. Because we are reversing the summary judgment on the main claim, we necessarily reverse the summary judgment on the counterclaim.
[3] Montealegre owned or indirectly controlled approximately 38,000 shares of Banco Mercantil.
[4] Counsel for the bank stated: "Our position is that we made a scrivener's error, this is a clear contract. It says what it means. We wrote it wrong. It has nothing to do with ambiguity."
[5] It would appear that the circuit court meant to say "vague" and not "ambiguous."
[6] Based upon our reading of the agreement and review of the testimony surrounding the aborted closing, while the question of whether the shares were titled personally in Montealegre's name is controverted and not irrelevant to the dispute between the parties, that question does not appear to us to be the core issue in the case.
[7] Such a conclusion is underscored by the fact that the circuit court considered, and apparently relied upon, parol evidence before granting summary judgment. Use of parol evidence to determine either the intent of the parties or the terms of a contract precludes summary judgment. See Bayco Dev. Co. v. Bay Med. Ctr., 832 So.2d 921, 922 (Fla. 1st DCA 2002) (summary judgment not appropriate when parol evidence is required to ascertain intent of the parties).