In re Dale Frederick ALFORD, Jr., and Terri Ann Alford, Debtors.

Susan K. Woodard, Chapter 7 Trustee, Plaintiff,

v.

Synovus Bank of Tampa Bay, as successor by assignment to United Bank and Trust Company, a Florida banking corporation, and Dale F. Alford, Sr., an individual, Defendants.

Bankruptcy No. 8:05–bk–25425–PMG. Adversary No. 8:06–ap–111–PMG.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Feb. 8, 2007.

Steven M. Berman, Berman PLC, Tampa, FL, for Plaintiff.

Andrew T. Jenkins, Bush Ross, PA, Tampa, FL, for Defendants.

**ORDER ON (1) PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM; (2) PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND (3) DEFENDANT, SYNOVUS BANK OF TAMPA BAY'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT I OF THE COMPLAINT**

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider (1) the Plaintiff's Motion to Dismiss Counterclaim; (2) the Plaintiff's Motion for Summary Judgment; and (3) the Defendant, Synovus Bank of Tampa Bay's Motion for Summary Judgment as to Count I of the Complaint.

The primary issue in this case is whether a payment made to Synovus Bank of Tampa Bay within ninety days of the Debtors' bankruptcy petition, in connection with the sale of certain real property located in Pasco County, Florida, was a preferential transfer within the meaning of § 547(b) of the Bankruptcy Code.

## I. Background

The Debtor, Dale F. Alford, Jr., was the President of a Florida corporation known as Mercury Technology Services, Inc. (Doc. 25, Affidavit of Debtor, ¶ 2).

On August 20, 2002, Mercury Technology Services, Inc. (MTS) entered into a Loan Agreement with United Bank and Trust Company, pursuant to which MTS borrowed the sum of $270,000.00 from the Bank. (Doc. 1, Complaint, Exhibit A, U.S. Small Business Administration Note). Synovus Bank of Tampa Bay (the Bank) is the successor in interest to United Bank and Trust Company.

The Debtor personally guaranteed the Loan from the Bank to MTS. (Doc. 1, Complaint, Exhibit D, Unconditional Guarantee).

The Loan was secured by a security interest in all of MTS's equipment and machinery, furniture and fixtures, inventory, accounts receivable, contract rights and general intangibles. (Doc. 1, Complaint, Exhibits B and C, Security Agreement and Financing Statement).

The Loan was further secured by a Mortgage on certain Real Property located

in Pasco County, Florida (the Real Property). (Doc. 1, Complaint, Exhibit G, Mortgage). The Real Property was owned by the Debtor and his father, Dale F. Alford, Sr., as tenants in common. (Doc. 25, Affidavit of Debtor, ¶ 16). The Mortgage provided that it was given to secure the Note dated August 20, 2002, and further provided:

> This Mortgage secures a Promissory Note in the amount of $270,000.00; However, *this Mortgage is limited to $100,000.00 and intangible taxes in the amount of $200.00* only are affixed hereto.

(Doc. 1, Complaint, Exhibit G, Mortgage)(Emphasis supplied). The Mortgage was signed by the Debtor and his father.

In connection with the Loan, the Debtor and his father also signed a Hypothecation Agreement. (Doc. 1, Complaint, Exhibit F, Hypothecation Agreement). The Hypothecation Agreement provided in part:

> In order to induce Bank to make or extend loans, advances or other financial accommodations to Mercury Technology Services, Inc., a Florida corporation (the "Borrower"), and in consideration thereof, we hereby consent and agree that the property described in Exhibit "A" hereto (the "Property"), of which we are the owner, may be and is hereby mortgaged and pledged to the Bank as collateral, and Bank is hereby granted a mortgage and security interest in the Property for and *to secure any and all obligations and liabilities of Borrower to Bank,* whether now existing or hereafter arising, direct or contingent, due or to become due, and any extension or renewal thereof, upon any terms and conditions whatsoever (collectively, the "Liabilities"), and with the same force and effect as if the Property were owned by Borrower and mortgaged and pledged to the Bank. A separate mortgage is being

executed and delivered to Bank in furtherance hereof (the "Mortgage").

(Doc. 1, Complaint, Exhibit F, Hypothecation Agreement, ¶ 1)(Emphasis supplied). In contrast to the Mortgage, the Hypothecation Agreement does not contain language that limits the amount of the "pledge" to $100,000.00 or any other specific amount.

MTS discontinued its business operations in mid–2004, and the assets of the business were sold. The proceeds from the sale were not paid to the Bank at the time that the business assets were liquidated. (Doc. 27, Affidavit of Denise G. Unley, ¶ 16).

On August 30, 2005, the Debtor and his father sold the Real Property that was the subject of the Mortgage and Hypothecation Agreement for the sum of $410,000.00. Of the total sales price, the Bank received the sum of $170,863.10. (Doc. 27, Exhibit L to Affidavit of Denise G. Unley, Settlement Statement).

The Debtor and his wife filed a petition under Chapter 7 of the Bankruptcy Code on October 13, 2005.

On February 22, 2006, the Chapter 7 Trustee filed a Complaint to Avoid and Recover Preferential and Fraudulent Transfers against the Bank and the Debtor's father.

In Count I of the Complaint, the Trustee alleges that the Debtor transferred the sum of $170,863.10 to the Bank on August 30, 2005, in connection with the sale of the Real Property, and that the payment satisfies the elements of a voidable preference under § 547(b) of the Bankruptcy Code.

The Bank subsequently filed an Answer to the Complaint, combined with a Counterclaim against the Trustee. (Doc. 6). In the Counterclaim, the Bank seeks "the entry of a judgment imposing an equitable lien on the Real Property," because the

Debtor had allegedly engaged in certain improper conduct prior to the filing of the Bankruptcy petition.

The Trustee filed a Motion to Dismiss the Counterclaim on the grounds that (1) the Trustee was not the proper defendant; (2) the Bank failed to plead fraud with particularity; and (3) the Bank failed to state a cause of action for the imposition of an equitable lien.

Additionally, the Trustee and the Bank each filed a Motion for Summary Judgment.

In her Motion for Summary Judgment, the Trustee asserts that the Debtor transferred the sum of $170,863.10 to the Bank within ninety days of the filing of the bankruptcy petition, and that the transfer satisfies the elements of a voidable preference under § 547(b) of the Bankruptcy Code. (Doc. 13, ¶¶ 31–37). Specifically, the Trustee contends that the Mortgage expressly limited the Bank's secured interest in the Real Property to the sum of $100,000.00. Consequently, the additional $70,863.10 received by the Bank when the Real Property was sold constituted a payment on account of an antecedent, unsecured debt. (Transcript, pp. 18–19).

In the Bank's Motion for Summary Judgment, on the other hand, it asserts that the transfer cannot be avoided under § 547(b) because it did not enable the Bank to receive more than it would have received in the Chapter 7 case. Specifically, the Bank contends that it "was fully secured up to the amount of the Transfer if not to the full amount of the Loan," because the Hypothecation Agreement contained no limit on the amount of the Bank's security interest in the Real Property. (Doc. 24, p. 4).

## II. The Motions for Summary Judgment

The primary issue in this case is whether the Bank's lien on the Property was limited to the sum of $100,000.00, as reflected in the Mortgage, or whether the Bank's claim was secured to the extent of "any and all obligations" owed by MTS to the Bank, as reflected in the Hypothecation Agreement. If the Bank's lien was limited to $100,000.00 pursuant to the Mortgage, the additional $70,863.10 received by the Bank upon the sale of the Property may constitute payment of an antecedent, unsecured debt, as asserted by the Trustee.

■ Generally, if multiple documents are signed together as part of the same transaction, the documents should be interpreted together in an effort to determine the intent of the parties.

Where other instruments are executed contemporaneously with a mortgage and are part of the same transaction, the mortgage may be modified by these other instruments. All the documents should be read together to determine and give effect to the intention of the parties.

*Boyette v. Carden,* 347 So.2d 759, 761 (Fla. 1st DCA 1977)(quoted in *Sardon Foundation v. New Horizons Service Dogs, Inc.,* 852 So.2d 416, 420 (Fla. 5th DCA 2003)). "When two documents are executed by the same parties as part of a single transaction regarding the same subject matter, they are to be read and construed together." *KRC Enterprises, Inc. v. Soderquist,* 553 So.2d 760, 761 (Fla. 2d DCA 1989).

■ Additionally, if the multiple documents include a mortgage, it is generally held that Courts should interpret the documents with a view to effectuating the intention of the parties.

The primary rule of construction of a mortgage is to ascertain the intention of the parties, which is accomplished not only from the face of the instrument but

also from the situation of the parties and the nature and object of the transaction. *Boyette v. Carden,* 347 So.2d at 761(quoted in *Sardon Foundation,* 852 So.2d at 420); *Huntington National Bank v. Merrill Lynch Credit Corporation,* 779 So.2d 396, 398 (Fla. 2d DCA 2000)(The primary rule of construction of a mortgage is to determine the intention of the parties, which is achieved by evaluating the terms of the documents, the situation of the parties, and the nature and purpose of the transaction.)

■ Finally, if the transaction in its entirety is found to be ambiguous, parol evidence is permissible to determine the parties' intention. "If the agreement is deemed ambiguous, parol evidence, including the conduct of the parties in their course of dealings, would be admissible to ascertain the parties' true intent." *Sardon Foundation,* 852 So.2d at 420. If separate documents comprising a single transaction are inconsistent with one another, for example, "the ambiguity created by the mutual repugnance of the instruments requires consideration of such evidence, parol or otherwise, as the parties may present on the question of the intent of the parties." *Saco Development, Inc. v. Joseph Bucheck Construction Corporation,* 373 So.2d 419, 421 (Fla. 1st DCA 1979).

■ In this case, the Court finds that the Note, the Guaranty, the Mortgage, the Hypothecation Agreement, and the other documents executed on August 20, 2002, were all components of a single transaction, and should be read and construed together. The documents evidence a single loan agreement pursuant to which the Bank was the lender, MTS was the borrower, and the Debtor was a guarantor and mortgagor.

Second, the Court finds that the transaction involves a Mortgage, and that the loan documents should therefore be construed so as to determine the intention of the parties. *Boyette,* 347 So.2d at 761.

■ Third, the Court finds that the terms of the Hypothecation Agreement are inconsistent with the terms of the Mortgage. The inconsistency is illustrated by contrasting the language that is hand-typed on the first page of the Mortgage with the language that is contained in the first paragraph of the Hypothecation Agreement. The Mortgage provides that it is "limited to $100,000.00 and intangible taxes." The Hypothecation Agreement provides that the interest granted to the Bank is to "secure any and all obligations and liabilities of the Borrower (MTS) to the Bank." The Hypothecation Agreement does not include language that corresponds to the $100,000.00 limitation that appears in the Mortgage.

Fourth, because of the clear inconsistency between the terms of the Mortgage and the terms of the Hypothecation Agreement, the Court finds that the conduct of the parties and other relevant evidence should be considered to determine the parties' intent. *Sardon Foundation,* 852 So.2d at 420; *Saco Development,* 373 So.2d at 421.

■ Finally, the record reflects that a genuine issue of material fact is present in this case regarding the parties' intent to limit the Bank's interest in the Real Property to $100,000.00.

The Trustee contends, for example, that the Debtor intended to limit the Bank's interest in the Real Property to the sum of $100,000.00. To support her contention, the Trustee submitted an Affidavit of the Debtor, in which the Debtor asserts that he intended for MTS's equipment and other personal property to serve as the Bank's primary collateral, as set forth in

the Security Agreement executed in connection with the transaction. According to the Debtor, the Mortgage was only intended to supplement the Bank's collateral to the extent of $100,000.00. In his Affidavit, the Debtor states in part:

10. As President of Mercury Technologies, its was my intention that the interests in personal property set forth in the Security Agreement would provide Synovus collateral for the Promissory Note, and to more fully collateralize the Promissory Note, I individually granted Synovus a $100,000.00 Mortgage on the Real Property.

. . .

12. At the time I executed the Mortgage, I only intended on granting Synovus a mortgage limited to the amount of $100,000.00.

13. At the time that I executed the Mortgage, I did not intend to grant Synovus a mortgage to cover the entire $270,000.00 Promissory Note.

. . .

15. I never intended to grant Synovus a Mortgage with respect to any appreciation in value of the Real Property.

(Doc. 25, Affidavit of Dale Frederick Alford, Jr.). At the hearing on the cross-Motions for Summary Judgment, the Trustee contended that the Debtor's assertions are supported by the facts that (1) the Bank drafted the Mortgage document that contained the limiting language; (2) documentary stamps were only affixed to the Mortgage, but not the Hypothecation Agreement; and (3) the Mortgage is more specific and contains the special, typed language regarding the limitation. (Transcript, pp. 20–21).

The Bank contends, on the other hand, that the parties' intent was for the Bank to receive an amount equal to the Debtor's one-half interest in the Real Property in the event of default under the Loan documents. According to the Bank, the Real Property was valued at $200,000.00 at the time that the Loan was extended, so that the $100,000.00 limit set forth in the Mortgage simply reflected the value of the Debtor's one-half interest at that time. (Doc. 26, pp. 3, 10). To support its position, the Bank filed the Affidavit of Denise G. Unley in Opposition to the Chapter 7 Trustee's Motion for Summary Judgment. (Doc. 27). In her Affidavit, Unley stated in part:

10. . . . The Mortgage stated that "this Mortgage is limited to $100,000.00." At the time of the Loan, the Property was valued at $200,000.00 with the Debtor's one-half interest in the Property, which he owned as tenants in common with Alford, Sr., being $100,000.00. The intent of the parties was not to limit the Bank's security interest in the Property to $100,000.00. Rather, the Bank's intent from the beginning was that the Bank would, in the event of default, receive the Debtor's one-half interest in the Property.

. . .

25. As a result of the sale of the Property, the Bank received the sum of $170,863.10, representing the Debtor's one-half interest in the Property as tenants in common with Alford, Sr., minus closing costs and a $10,000.00 payment from the Debtor's proceeds to Alford, Sr.

(Doc. 27). The Bank contends that the parties' intent is further evidenced by the facts that (1) the Debtor had signed a Commitment Letter prior to entering the Loan, whereby he agreed to an "assignment of 1/2 interest in real estate and all improvements located in Hudson. Fl;" (2) after the Loan was in default, the Debtor

offered the Bank a Deed in Lieu of Foreclosure of his interest in the Real Property to satisfy the Bank's claim; and (3) the Debtor and the Bank entered into a Payment Agreement while the Loan was in default, pursuant to which the Bank agreed to defer payment of the principal balance due on the Loan for six months "to allow the orderly sale of the real estate held as collateral." (Doc. 27, Exhibits A, J, and K to Affidavit).

An issue of fact exists in this case regarding whether the parties intended for the Bank's Mortgage on the Real Property to be limited to the sum of $100,000.00, or whether the parties intended the Mortgage to secure the full amount of the Loan, to the extent of the Debtor's one-half interest in the Real Property. As a result of the material issue of fact, this matter is not suitable for disposition by summary judgment. *Langford v. Paravant, Inc.*, 912 So.2d 359, 360–61 (Fla. 5th DCA 2005); *Montealegre v. Banco De Credito Centro–Americano, S.A.*, 895 So.2d 1097, 1099 (Fla. 3d DCA 2004). The Trustee's Motion for Summary Judgment, and the Bank's Motion for Summary Judgment as to Count I of the Complaint, should be denied.

### III. The Counterclaim

The Bank filed a Counterclaim to the Trustee's Complaint to Avoid and Recover Preferential and Fraudulent Transfers, and requested the entry of a judgment imposing an equitable lien on the Real Property. In the Counterclaim, the Bank asserts that the Debtor liquidated the assets of MTS, which served as the Bank's collateral, without the Bank's consent; that the Debtor agreed to convey his interest in the Real Property to the Bank after the Loan was in default, but never intended to complete the conveyance; and that the Debtor unjustly benefited from his conduct. (Doc. 6).

In response, the Trustee filed a Motion to Dismiss the Counterclaim on the grounds that (1) the Trustee was not the proper defendant; (2) the Bank failed to plead fraud with particularity; and (3) the Bank failed to state a cause of action for the imposition of an equitable lien. (Doc. 10).

It is well-established that a complaint or counterclaim should not be dismissed for failure to state a cause of action unless "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)(quoted in *In re Venice–Oxford Associates Limited Partnership*, 236 B.R. 814, 816–17 (Bankr. M.D.Fla.1998)).

■ Under Florida law, an equitable lien may be imposed on real property on the basis of "(1) a contract showing an intent to charge a particular property with a debt or an obligation or (2) *a court may impose such a lien out of general considerations of right or justice.*" *In re Diamond*, 196 B.R. 635, 639 (Bankr.S.D.Fla.1996)(Emphasis supplied).

■ In this case, the Bank alleged that the Debtor had caused its collateral to be liquidated without the Bank's consent, and that the Debtor had deceitfully caused the Bank to defer payments on the Loan. The Bank further alleges that it has no adequate remedy at law because its collateral was improperly sold or conveyed by the Debtor. (Doc. 6).

The Affidavit of Denise G. Unley supports the Bank's allegation that its collateral was converted. According to Unley, after the Loan was in default, the Bank learned that "the Business Assets, which had been subject to the Bank's properly perfected security interest pursuant to

Chapter 679, Florida Statutes, had been liquidated without the knowledge or consent of the Bank." (Doc. 27, ¶ 16).

Under these circumstances, the Court cannot determine that the Bank can prove no set of facts in support its claim for an equitable lien.

In the Counterclaim, however, the Bank seeks the imposition of an equitable lien "on the Real Property," which was defined as the property that was previously owned by the Debtor and his father, and which was sold on August 30, 2005, prior to the filing of the Bankruptcy petition. Consequently, the Trustee asserts that the Bank is seeking a remedy against property that was never an asset of the bankruptcy estate.

For this reason, the Court finds that the Motion to Dismiss should be granted, and the Counterclaim should be dismissed, without prejudice to the Bank's right to file an amended Counterclaim clarifying the precise relief that it seeks.

### IV. Dale F. Alford, Sr.

In Count II and Count III of the Complaint, respectively, the Trustee seeks to recover certain payments from the Debtor's father, Dale F. Alford, Sr., as preferential or fraudulent transfers. Dale F. Alford, Sr. did not answer the Complaint, and a Clerk's Default was entered against him on August 15, 2006. (Doc. 21).

In the Trustee's Motion for Summary Judgment presently under consideration, she seeks the entry of a judgment against Dale F. Alford, Sr., in addition to the Bank. The Trustee acknowledges, however, that the Motion was not served on the Debtor's father in compliance with Rule 56(c) of the Federal Rules of Civil Procedure. (Transcript, p. 27).

Notice and an opportunity to be heard are central elements of due process, and notice of any proceeding which is to be accorded finality should be reasonably calculated to inform the interested party of the pendency of the action and an opportunity to present their objections. *In re O'Neal,* 214 B.R. 405, 407 (Bankr.N.D.Ala. 1997).

In this case, the Trustee acknowledges that the Motion for Summary Judgment was not served on Dale F. Alford, Sr., although it appears from the record that the Affidavit of the Debtor in support of the Motion, and the Order scheduling the hearing on the Motion, were both served on the Debtor's father at an address in Hudson, Florida. (Docs.18, 25). Nevertheless, the consequences of a judgment against Dale F. Alford, Sr., an individual, would be significant. In Count I of her Complaint, the Trustee is seeking the entry of a judgment against the Debtor's father in an amount exceeding $60,000.00. In Count II, the Trustee is seeking a judgment that avoids a substantial debt owed by the Debtor to his father. Under these circumstances, the Court finds that due process requires service on Dale F. Alford, Sr. of the Motion seeking a final judgment against him.

The Trustee's Motion for Summary Judgment should be denied to the extent that it seeks the entry of a judgment against Dale F. Alford, Sr., without prejudice to the Trustee's right to pursue her default remedies against the Debtor's father in accordance with Rule 55 of the Federal Rules of Civil Procedure and Rule 7055-2 of the Local Rules of the United States Bankruptcy Court for the Middle District of Florida.

### V. Conclusion

The proceeding before the Court is an action to avoid and recover preferential and fraudulent transfers filed by the Chapter 7 Trustee in this case.

The Motion for Summary Judgment filed by the Trustee, and the Motion for Summary Judgment filed by the Defendant, Synovus Bank of Tampa Bay, should be denied. A genuine issue of material fact exists in this case regarding whether the parties intended for the Bank's Mortgage on the Real Property to be limited to the sum of $100,000.00, or whether the parties intended the Mortgage to secure the full amount of the Loan, to the extent of the Debtor's one-half interest in the Real Property.

Additionally, the Trustee's Motion for Summary Judgment should be denied as to the Defendant, Dale F. Alford, Sr., because the Motion was not served on Dale F. Alford, Sr. pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

Finally, the Trustee's Motion to Dismiss the Bank's Counterclaim should be granted, and the Counterclaim should be dismissed, without prejudice to the Bank's right to file an Amended Counterclaim to clarify the precise relief that it seeks.

Accordingly:

**IT IS ORDERED** that:

1. The Motion for Summary Judgment filed by the Plaintiff, Susan K. Woodard, as Trustee, is denied.

2. The Motion for Summary Judgment as to Count I of the Complaint filed by the Defendant, Synovus Bank of Tampa Bay, is denied.

3. The Plaintiff's Motion to Dismiss Counterclaim is granted, and the Counterclaim filed by Synovus Bank of Tampa Bay is dismissed, without prejudice to the right of Synovus Bank of Tampa Bay to file an Amended Counterclaim within twenty (20) days of the date of this Order. If no Amended Counterclaim is filed within twenty (20) days, the Counterclaim shall be deemed finally dismissed.