On Motion for Rehearing

SCALES, J.
We deny Reverse Mortgage Solutions’s motion for rehearing. We withdraw our prior opinion of July 15, 2015, and substitute the following opinion for that previously issued.
Celia Smith (“Mrs. Smith”), who was the defendant below, appeals from a Final Judgment of Foreclosure arising out of a home equity conversion mortgage signed and executed in May of 2008, by Mrs. Smith and her now deceased husband, Kenneth Smith (“Mr.Smith”). Because Reverse Mortgage Solutions, the plaintiff below and appellee here, failed to establish the occurrence of a condition precedent to its right to foreclose, we reverse.
I. Facts
On May 8, 2008, while Mr. and Mrs. Smith were married, Mr. Smith signed and executed an adjustable rate note secured by a home equity conversion mortgage, or what is commonly referred to as a “reverse mortgage.” A reverse mortgage allows elderly homeowners to receive monthly payments from a lender based upon the *223 homeowners’ equity in their principal residence. Instead, of the more conventional mortgage arrangement — where the borrower receives a lump sum from a lender, and then repays the lender over time with monthly payments — generally, in a reverse mortgage arrangement, the lender makes monthly payments to the elderly homeowners, and the homeowners’ obligation to repay the lender ripens only upon the homeowners’ death or when the homeowners move from their home. See, e.g., Bennett v. Donovan, 703 F.3d 582, 584-85 (D.C.Cir.2013).
The reverse mortgage at issue here encumbered the residential property where Mr. and Mrs. Smith lived together as -their principal residence. Mrs. Smith executed the mortgage, but she did not sign the promissory note.[1]
Following Mr. Smith’s death in December 2009, Reverse Mortgage Solutions filed a verified complaint for foreclosure of the reverse mortgage, alleging that Mr. Smith was the “sole borrower under the note and mortgage” and that his death triggered the acceleration clause under the mortgage agreement. No other ground for acceleration was alleged.
The verified complaint alleged that: (i) $229,475 was due under the note and mortgage, plus interest; (ii) all conditions precedent to the acceleration of the note, and to foreclose on the mortgage, had been fulfilled or . had occurred; and (iii) Mrs. Smith owned the property.[2] Mrs. Smith’s answer denied the cómplaint’s condition precedent allegations, and specifically pled: “This mortgage should not be accelerated as the Defendant [Mrs. Smith] is still'alive and living in the real property as her homestead.”
Following a bench trial,' the trial court entered a form final judgment of foreclosure in favor of Reverse Mortgage Solutions in the amount of $248,403.59, foreclosing on Mrs. Smith’s interest in the property and setting a September 2013 foreclosure sale date. The final judgment contains no specific findings of fact or other adjudications with regard to whether all conditions precedent had occurred.
Mrs. Smith appeals the trial court’s Final Judgment of Foreclosure, contending that acceleration of the mortgage is inappropriate under' both the express provisions of the mortgage document and the federal statute governing the insurability of reverse mortgages by the U.S. Department of Housing and Urban Development (HUD).[3] Essentially, Mrs. Smith argues that she is a co-borrower under the mortgage, which prohibits foreclosure until she either dies or no longer maintains the property as her principal residence.
We conclude that Mrs. Smith is a co-borrower as contemplated in the mortgage *224 and, therefore, a condition precedent to Reverse Mortgage Solutions’s right to foreclose (to wit,, Mrs. Smith’s death) has not occurred. Thus, we remand for a new trial to allow the trial court to adjudicate specifically whether the other condition precedent to Reverse Mortgage Solutions’s right to foreclose has occurred, i.e., whether the encumbered real property was Mrs. Smith’s principal residence as of the date of the trial.
II. Analysis
A. Issue Before the Court
The- issue before this Court is whether the trial court erred in it's implicit determination that all conditions precedent to Reverse Mortgage Solutions’s entitlement to foreclosure had occurred. Specifically, we must determine whether, as a matter of law, Mrs. Smith is a “Borrower” as that term is used in. the mortgage. If Mrs. Smith is a.“Borrower,” either her death or her ceasing to use the subject property as her principal residence is a condition precedent to Reverse Mortgage Solutions’s right to foreclose the mortgage.
B. Standard of Review
We first note that, consistent with the, dictates of Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla.1979), and its progeny, the burden is on Mrs. Smith as the appellant to demonstrate error by providing this Court with an adequate record of the proceedings below, and, without such a record, affirmance is normally required. When, as here, the issue presented involves a pure question of law (i.e., judicial construction of the reverse mortgage to determine whether Mrs. Smith is a “Borrower” as defined in the reverse mortgage), and the error of law appears on the face of the final judgment,[4] the absence of a transcript does not prevent reversal. See BarrNunn, LLC v. Talmer Bank & Trust, 106 So.3d 51, 52 (Fla. 2d DCA 2013) (“[T]he absence of a transcript doe's not preclude reversal where an error of law is apparent on the face of the judgment[.]”) (quoting Chirino v. Chirino, 710 So.2d 696, 697 (Fla. 2d DCA 1998)).
Normally, in a case such as this, the issue before this Court simply would be whether the trial court’s conclusion (subsumed in the final judgment) — that all conditions precedent to the plaintiffs entitlement to foreclosure have occurred — is supported by competent substantial evidence. See Verneret v. Foreclosure Advisors, LLC, 45 So.3d 889, 891 (Fla. 3d DCA 2010) (“Findings of fact by a trial judge in a nonjury proceeding will not be set aside on review unless totally unsupported by competent and substantial evidence.”). In this ease, however, the trial court’s entry of the Final Judgment of- Foreclosure hinged not on weighing any trial evidence, but, rather, upon an interpretation of the reverse mortgage. The trial court found that all conditions precedent had occurred based upon its legal'conclusion that Mrs, Smith was not a “Borrower” under the mortgage.
A trial court’s construction of notes and mortgages involves pure questions of law, and therefore is subject to de novo review. Nagel v. Cronebaugh, 782 So.2d 436, 439 (Fla. 5th DCA 2001) (determining that general contract principles governed the trial court’s interpretation of the promissory note; thus, the appropriate standard of review was de novo). We, there *225 fore, review the trial court’s construction of the reverse mortgage de novo.
C. Condition Precedent to Foreclosure
It is axiomatic that in a mortgage foreclosure action a plaintiff must plead and prove the occurrence of all conditions precedent. See Konsulian v. Busey Bank, N.A., 61 So.3d 1283, 1285 (Fla. 2d DCA 2011).
Consistent with the requisites of 12 U.S.C. § 1715z-20(j)[5] governing reverse mortgages insured by HUD, the subject mortgage contains plain language expressly conditioning the lender’s acceleration and foreclosure rights on the death of any “Borrower” whose principal residence is the property encumbered by the mortgage. Because the parties stipulate that Mrs. Smith has not died, and because Mr. Smith’s death is the sole ground alleged for Reverse Mortgage Solutions’s acceleration and foreclosure, if Mrs. Smith is a “Borrower” under the mortgage, then a condition precedent to the lender’s right to foreclose has not occurred, thereby precluding the lender’s foreclosure action.
D. Analysis of Relevant Mortgage Language — Mrs. Smith’s Status as a “Borrower”
We begin our analysis of whether Mrs. Smith is a “Borrower” by looking at the language of the mortgage.[6] The first paragraph of the mortgage begins by identifying Mr. Smith as “a married man” and the mortgagor, which it thereafter refers to as the “Borrower,”
The mortgage’s fourth paragraph contains the Borrower Covenant,[7] whereby “the Borrower” acknowledges and covenants to the mortgagee that: (i) the Borrower owns the property; (ii) the Borrower has the right to mortgage, grant, and convey the property; and (iii) the property is otherwise unencumbered. The Borrower Covenant also requires the Borrower to defend the title to the property.
The final portion of the mortgage plainly indicates that: (1) both Mr. and Mrs. Smith are the “Borrower” under the mortgage; (2) both Mr. and Mrs. Smith signed the mortgage as the “Borrower”; and (3) both Mr. and Mrs. Smith’s signatures were verified jointly by two witnesses and one notary jurat.
*226 Specifically, immediately before the witnesses’s signatures, the mortgage states the following: “BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.” Below this statement, both Mr. Smith’s and Mrs. Smith’s signatures appear. Mrs, Smith’s signature was no accident as her name was pre-printed on the document below the line she was required to sign.
Paragraph 9 of the mortgage contains the condition precedent required in such reverse mortgages by virtue of 12 U.S.C. § 1715z — 20(j). This provision specifically provides: “Lender may require immediate payment in full of all sums secured by this Security Instrument if: (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower[.]” (emphasis added).
Thus, based on the plain and unambiguous language of the mortgage — which was executed by both Mr. and Mrs. Smith- — © both Mr. and Mrs. Smith weré treated as the “Borrower” under the mortgage, and (ii) each borrower is protected from the foreclosure of the mortgage until both borrowers die.
Hence, this Court’s determination that Mrs. Smith is a co-borrower — and, therefore, that her .death is a condition precedent to Reverse Mortgage Solutions’ ability to foreclose — could end here.
E. Conclusion Consistent With Florida’s Homestead Provisions
Our conclusion that Mrs. Smith is a “Borrower” under the mortgage is also supported by the reference to Mr. Smith as a “married man” in the mortgage’s opening paragraph, coupled with the provision of the Borrower Covenant whereby “Borrower” expressly covenants that “Borrower” has the right to mortgage, grant, and convey the property.
Florida’s Constitution requires Mrs, Smith’s signature on the mortgage to effectuate the lender’s security interest in homestead property. Art. X, § 4(c), Fla. Const. (“The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage ..., ”); see Pitts v. Pastore, 561 So.2d 297, 301 (Fla. 2d DCA 1990) (holding that a mortgage is ineffectual as a lien until such time as either the spouse joins in the alienation or the property loses its homestead status). Additionally, because Mr. Smith was married to Mrs. Smith at the time the mortgage was executed, only a deed containing Mrs. Smith’s signature could convey with validity her interest in the property. Id.
Therefore, only if Mrs. Smith is a “Borrower” would this portion of the Borrower Covenant be accurate; Mr. Smith, acting alone, did not “have the right” to either encumber or convey both his and Mrs. Smith’s interest in the couple’s homestead property.[8]
Plainly, Reverse Mortgage Solutions intended for the Borrower Covenant to confirm the mortgage’s validity and enforceability by having “Borrower” warrant its capacity and ability to encumber and convey the property. Under Florida’s constitutional homestead provisions, this goal is achieved only if Mrs. Smith is a “Borrower.”
"F. Application of Federal Reverse Mortgage Law
Even more persuasive to our determination is the application of relevant provi *227 sions of federal law related to reverse mortgages.[9]
At oral argument, the parties conceded that the subject mortgage was, indeed, a “home equity conversion mortgage” issued by Reverse Mortgage Solutions and insured by HUD, pursuant to 12 U.S.C. § 1715z-20.[10] 12 U.S.C. § 171fc-20(j) is titled “[s]afeguard to prevent displacement of-homeowner” and provides, in relevant part:
The Secretary may not insure a home equity conversion mortgage under this section unless such mortgage provides that the homeowner’s obligation to satisfy the loan obligation is deferred until the homeowner’s death, the sale of the home, or the occurrence of other events specified in regulations of the Secretary, (emphasis added)
This provision goes on to expressly define the term “homeowner” as including the spouse of the homeowner: “For purposes of this subsection, the term ‘homeowner’ includes the spouse of a homeowner.” Id.
While the plain language of the statute imposes an obligation only on the Secretary of HUD with regard to provisions that must be' contained in reverse mortgages insured by HUD, it is undisputed that the subject mortgage is, indeed, a reverse mortgage insured by HUD. We are compelled to construe a contract eon-sistent with specific statutes that regulate and govern the contract. See Westside EKG Assocs. v. Found. Health, 932 So.2d 214, 216 (Fla. 4th DCA 2005); see also S. Crane Rentals, Inc. v. City of Gainesville, 429 So.2d 771, 773 (Fla. 1st DCA 1983) (“The laws which exist at the time and place of the making of a contract enter into and become a part of the contract made, as if they were expressly referred to and incorporated in its terms, including those laws which affect its construction, validity, enforcement or discharge.”).
The explicit purpose of 12 U.S.C. § 1715a-20(j) is to provide a safeguard against-the displacement of elderly homeowners. The statute would be without effect if a mortgagee were permitted to foreclose on a mortgage while' a “homeowner,” as that term is expressly defined in the statute, maintains the subject property as his or her principal residence. This is true especially when, as here, the “homeowner” executed the very mortgage giving the mortgagee a security interest in the subject property.
Our interpretation of the subject reverse mortgage is made rather.’easy in light of Congress’s clear intent to protect from foreclosure a reverse mortgagor’s surviving spouse who is maintaining the encumbered property as his or her principal resi *228 dence.[11] The subject reverse mortgage is insured by HUD pursuant to a Congres-sionally prescribed scheme that expressly requires deferment of the obligation to satisfy the loan secured by such mortgages until the death of the borrower and any spouse of the borrower.
G. Summary
Against the backdrop of this unambiguous Congressional mandate, it would be difficult, if not impossible, for us to construe Mrs. Smith as anything other than a “Borrower” for the purposes of Paragraph 9’s express conditions precedent. Our conclusion is reinforced by Mrs. Smith having executed the subject mortgage before a notary and two witnesses — over her pre-printed name on the subject mortgage — under a heading that reads, “BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained ....” in the mortgage (emphasis added). Our conclusion is further reinforced by the express provisions of the mortgage’s Borrower Covenant, as well as Florida’s constitutional requirement that the reverse mortgage could not have encumbered Mrs. Smith’s interest in the subject property absent her signature. Art. X, § 4(c), Fla. Const.
III. Conclusion
In light of the foregoing, we conclude that, as a pure question of law, Mrs. Smith was a “Borrower” as that term is contemplated in Paragraph 9 (Grounds for Acceleration of Debt) of the subject reverse mortgage. Therefore, pursuant to Paragraph 9, as a condition precedent to its entitlement to foreclosure, Reverse Mortgage Solutions was required to establish either that: (i) Mrs. Smith had died, or, (ii) as of August 5, 2013 (the date of trial), the property was no longer Mrs. Smith’s principal residence. Reverse Mortgage Solutions pleaded neither occurrence.
Reversed and remanded for entry of judgment in favor of Mrs. Smith.[12]
ROTHENBERG, J., concurs.

.Unlike a traditional mortgage arrangement, in a reverse mortgage arrangement, the lender, after determining the value of the borrower's principal residence, generally will make regular (usually monthly) payments to the borrower during the borrower’s lifetime. The note’s principal amount is derived by a lender formula that includes the suim of the value of the lender’s payments to the borrower, closing costs, accrued interest, insurance and ser-vicer/lender fees. See, e.g., Bennett, 703 F.3d at 584-85. While the subject note and mortgage both reference a “Loan Agreement” (which, presumably, defines the monthly amount paid to the borrower and the calculation of the note’s principal), no Loan Agreement is contained in the record on appeal. The subject note’s principal amount is $544,185.

. Pursuant to Eleventh Judicial Circuit Administrative Order No. 10-03 Al, Reverse Mortgage Solutions filed, contemporaneously with its complaint, a form certifying that the subject property is Mrs. Smith’s homestead residence.

. See 12 U.S.C. § 1715z-20(j), infra note 4.

. Paragraph 7 of the Final Judgment of Foreclosure expressly forecloses all of Mrs. Smith’s interest in the subject property and implicitly recognizes that she is still alive. Hence, the error appears on the face of the judgment on appeal.

.This statutory provision, discussed in more detail in section II. F, below, reads in its entirety, as follows:
(j) Safeguard to prevent displacement of homeowner
The Secretary may not insure a home equity conversion mortgage under this section unless such mortgage provides that the homeowner’s obligation to satisfy the loan obligation is deferred until the homeowner's death, the sale of- the home, or the occurrence of other events specified in regulations of the Secretary. For purposes of this subsection, the term '‘homeowner” includes the spouse of a homeowner. Section 1647(b) of Title 15 and any implementing regulations issued by the Board of Governors of the Federal Reserve System shall not apply to a mortgage insured under this section.

. With regard to the note, only Mr. Smith is referenced as the "Borrower.” Mrs. Smith is neither mentioned nor referenced in the note. Reverse Mortgage Solutions, however, seeks no relief from Mrs. Smith based on the note. It is only Mrs. Smith’s status as a mortgagor that is implicated in this appeal.

. The Borrower Covenant reads in its entirety, as follows:
BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

. It is not clear from the record how the subject property was titled at the time the mortgage was executed by Mr. and Mrs. Smith. Reverse Mortgage Solutions’s verified complairit, however, alleges that Mrs. Smith is the owner of the subject property, an allegation Mrs, Smith admits in her answer.

. Paragraph 17 of the mortgage reads, in relevant part, as follows: "This Security In- . strument shall be governed by Federal law and the law of the jurisdiction in which the Property is located.”

. The record is replete with proof that the subject mortgage is' a "home equity conversion mortgage” issued and insured under the auspices of 12 U.S.C. § 1715z-20. The subject mortgage references: (i) a Federal Housing Authority case number, (ii) requirements promulgated by the HUD Secretary, (iii) certain events of default triggering the lender's right to foreclosure if authorized by the HUD Secretary, (iv) the right of the lender to accelerate the amounts secured by the mortgage if the HUD Secretary notifies the lender within eight months of loan initiation that the loan is not insurable pursuant to the National Housing Act (which includes 12 U.S.C. § 1715z-20). Additionally, both the verified complaint and the mortgage expressly reference a second mortgage — in which HUD is the mortgagee — securing any payments HUD might make on behalf of the Borrower pursuant to the National Housing Act. Indeed, HUD was named as a defendant in the action and HUD’s second mortgage was foreclosed in the Final Judgment of Foreclosure.

. It appears that, as part of the reverse mortgage origination process, some reverse mortgage originators are alleged to have advised one elderly spouse to execute a quit-claim deed, deeding their jointly owned property to the other spouse, so that a single "Borrower” would appear on all paperwork. See, e.g., Bennett, 703 F.3d at 585; Welte v. Wells Fargo Bank, N.A., No. EDCV-13-00463JGB, 2013 WL 6728889 at *2-3 (C.D.Cal. Dec. 18, 2013); Wiseman v. First Mariner Bank, No. ELH-12-2423, 2013 WL 5375248 at *4 (D.Md. Sept. 23, 2013). No such allegations have been made in this case. In fact, as mentioned earlier, the verified complaint specifically alleges that Mrs. Smith owns the subject property, and Mrs. Smith executed the subject mortgage. We need not, and do not, reach the issues implicated in those cases where the nature of the surviving spouse's ownership interest in the subject property is in dispute.

. Of course, nothing in this opinion should be construed to limit Reverse Mortgage Solutions's ability to file a new foreclosure action upon the future occurrence of any of the conditions precedent outlined in Paragraph 9 of the subject mortgage.