# Third District Court of Appeal

## State of Florida

Opinion filed April 18, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-3114
Lower Tribunal No. 10-3055
_____

**OneWest Bank, FSB,**
Appellant,

vs.

**Luisa Palmero, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Abby Cynamon, Judge.

Burr & Forman LLP and Joshua H. Threadcraft (Birmingham, AL), for appellant.

Carrera & Amador, P.A. and Juan M. Carrera, for appellees.

Before EMAS, LOGUE and LUCK, JJ.

LUCK, J.

The bank appeals the trial court's judgment for a surviving spouse in this reverse mortgage foreclosure case. After the borrower-husband passed away, and

the bank sought to foreclose for non-payment, the trial court concluded that the surviving spouse was not a borrower under the loan but the bank still could not foreclose because the federal reverse mortgage statute prohibited foreclosure against a surviving spouse living in the mortgaged residence. We agree the surviving spouse was not a borrower but vacate the judgment and reverse because the trial court improperly relied on the statute that no one raised as a defense to the foreclosure action.

*Factual Background and Procedural History*

In September 2006, Roberto and Luisa Palmero spoke to a reverse mortgage counselor for an hour and received "information about the implications of and alternatives to a reverse mortgage." In a session tailored to their unique financial circumstances, the counselor spoke to the Palmeros about the impact of the reverse mortgage on their estate and heirs. After the counseling session, the Palmeros certified that they had discussed the financial implications of, and alternatives to, the reverse mortgage, and they understood its advantages and disadvantages, the payment plan, and its costs.

In December 2006, the Palmeros mortgaged their home to Value Financial Mortgage Services, Inc. (The reverse mortgage was later assigned to OneWest Bank.) As part of the reverse mortgage, the Palmeros executed these five documents (among some others):

2

1. <u>The mortgage.</u> In the mortgage, the borrower was defined as "Roberto Palmero, a married man reserving a life estate unto himself with the ramainderman [sic] to Luisa Palmero, his wife, Idania Palmero, a single woman and Rene Palmero, a single man." In the signature block, it said, "BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it." Mr. and Mrs. Palmero signed as the borrower under this sentence.[1]

2. <u>The note.</u> The note defined borrower to mean "each person signing at the end of this Note." Mr. Palmero was the only person who signed at the end of the note as the borrower.

3. <u>The loan application.</u> In the loan application, the property was said to be in Mr. Palmero's name. Mr. Palmero was named as the borrower, and he signed as the borrower. Even though there was a space for a co-borrower, Mrs. Palmero was not listed as the co-borrower and she did not sign the loan application.

4. <u>The loan agreement.</u> In the loan agreement, borrower was defined as Mr. Palmero. Mr. Palmero, and no one else, signed the loan agreement as the borrower.

---

[1] The dissenting opinion says we "overlook[ed]" that Mrs. Palmero signed the mortgage as a borrower. We have not. That fact is in the third paragraph of the fact section of this opinion, just before this footnote.

5. The non-borrower spouse ownership interest certification.  The Palmeros acknowledged in the non-borrower spouse ownership interest certification that they were given ample time "prior to the closing of this reverse mortgage loan to consult with independent legal and tax experts of [their] own choosing regarding the ownership or vesting of real property that will serve as collateral for the reverse mortgage loan."  Mr. Palmero signed the certification as the borrower, while Mrs. Palmero signed as the non-borrower spouse.  In Mrs. Palmero's portion, she certified that "should [her] spouse predecease [her] . . . and unless another means of repayment [was] obtained, the home where [she] reside[s] may need to be sold to repay Reverse Mortgage debt incurred by [her] spouse.  If the home where [she] reside[s] [was] required to be resold," Mrs. Palmero agreed she understood "that [she] may be required to move from [her] residence."

The bank paid Mr. Palmero from May 2007 through July 2008, until he passed away in August 2008.  Under the terms of the mortgage, with the borrower now deceased, the bank accelerated the loan in November 2008.  When Mrs. Palmero did not pay the balance of the loan, the bank filed a complaint to foreclose on the home.

The case proceeded to trial, and after taking testimony and examining the loan documents, the trial court concluded that Mrs. Palmero was not a borrower.  But the trial court did not enter judgment for the bank because under the federal

4

reverse mortgage statute, 12 U.S.C. § 1715z-20(j), "the repayment of a reverse mortgage loan is deferred until the death of both the borrowing homeowner and the homeowner's spouse." Judgment was entered for Mrs. Palmero, and the bank has appealed.

*Standard of Review*

"A trial court's construction of notes and mortgages involves pure questions of law, and therefore is subject to de novo review." Smith v. Reverse Mortg. Sols., Inc., 200 So. 3d 221, 224 (Fla. 3d DCA 2016).

*Discussion*

OneWest contends the trial court erred by relying on the federal reverse mortgage statute to find for Mrs. Palmero because she did not plead in her answer that the statute prevented foreclosure and she did not raise the issue at trial. Mrs. Palmero responds that even without the federal statute, she was a borrower and could not be foreclosed under the reverse mortgage while she was still alive and residing in the mortgaged property. The competing arguments raise two questions for us about the trial court's final judgment: (1) did the trial court err in relying on the federal reverse mortgage statute not pleaded as a defense, nor raised at trial, to find for Mrs. Palmero; and (2) did the trial court err in concluding that Mrs. Palmero was not a borrower?

1. The federal statute.

5

The trial court concluded that even though Mrs. Palmero was not a borrower under the mortgage, she was still entitled to judgment because OneWest was precluded from foreclosing on the home under the federal reverse mortgage statute. Mrs. Palmero answered the foreclosure complaint with fifteen defenses. While Mrs. Palmero defended against foreclosure based on other federal statutes, her answer did not cite or rely on the federal reverse mortgage statute. During trial, and in the post-trial closing arguments, the federal reverse mortgage statute and regulations were not relied on by either party as a defense to foreclosure.

> Judge Padovano has succinctly and correctly described the rule for defenses:

> Generally, a defense must be raised in the responsive pleading or it is waived. Failure to assert an affirmative defense in the answer ordinarily amounts to a waiver of the defense. Because an affirmative defense can be waived if not timely raised, the trial judge has no authority to reject a claim on the basis of an unstated affirmative defense. For example, the trial judge has no authority to reject a claim on the ground that the statute of limitations has expired if no party has raised the statute as a bar to the claim.

Philip J. Padovano, Florida Civil Practice § 7:26 (2017-2018 ed.) (footnotes omitted); see also Cong. Park Office Condos II, LLC v. First-Citizens Bank & Tr. Co., 105 So. 3d 602, 607 (Fla. 4th DCA 2013) ("By failing to properly plead lack of standing and 'fraud,' the borrowers waived their right to assert these affirmative defenses in response to First-Citizens' summary judgment motion."); Langford v. McCormick, 552 So. 2d 964, 967 (Fla. 1st DCA 1989) ("Appellee did not plead undue influence as an affirmative defense at any point in the proceedings. He never

6

attempted to amend the pleadings to raise this issue either before or during trial. It is well settled that an affirmative defense must be pleaded or it is waived."); Bilow v. Benoit, 519 So. 2d 1114, 1117 (Fla. 2d DCA 1988) ("This affirmative defense was waived by Benoit's failure to plead it, and the trial court erred in relying on the defense as a basis for its final judgment."); Dysart v. Hunt, 383 So. 2d 259, 260 (Fla. 3d DCA 1980) ("[A] judgment upon a matter entirely outside of the issues made by the pleadings cannot stand; and where, as here, an issue was not presented by the pleadings nor litigated by the parties during the hearing on the pleadings as made, a decree adjudicating such issue is, at least, voidable on appeal." (quotation omitted)).

There's an exception to the general rule where a court may consider an unpleaded defense that was litigated by the consent of the parties. Padovano, supra, at § 7:26. But the parties did not consent to use the federal reverse mortgage statute and regulations as a defense to foreclosure. Mrs. Palmero was required to raise any federal statutory prohibition against foreclosure in her answer. Because she didn't, the issue was waived and the trial court could not rely on the federal reverse mortgage statute to enter judgment for Mrs. Palmero.[2]

---

[2] Because we conclude the defense based on the federal reverse mortgage statute was waived, we express no opinion on the merits of whether the statute prohibits foreclosing a reverse mortgage on a surviving spouse still living in the mortgaged residence. That issue undoubtedly will be decided another day when the argument has been properly preserved.

Despite the fact that the federal statute was not raised by Mrs. Palmero in her pleadings or as a defense at trial, the dissenting opinion says the statute compels us to rule for Mrs. Palmero because "it was the Bank itself that required Mrs. Palmero to sign as a borrower so that the Bank could obtain federal mortgage insurance. The federal government will not insure this type of loan unless the spouse signs as a co-borrower." This statement from the dissenting opinion is flawed for two reasons.

First, there was no evidence in the record that the bank required Mrs. Palmero to sign the mortgage because it wanted the federal government to insure the loan. The bank's representative testified at trial, and was asked why the bank would have a non-borrower spouse sign the mortgage. The representative said this was the bank's custom and practice so the non-borrower spouse had the opportunity within three days of the transaction to cancel it. Mrs. Palmero testified, too, and she said nothing about having to sign because of insurance.

Second, at the time Mrs. Palmero signed the mortgage in 2006, the federal government was insuring reverse mortgage loans where only one spouse signed as the mortgagor. See 24 C.F.R. § 206.27(c)(1) (2006) ("The mortgage shall state that the mortgage balance will be due and payable in full if a mortgagor dies and the property is not the principal residence of at least one surviving mortgagor, or a mortgagor conveys all or his or her title in the property and no other mortgagor

8

retains title to the property."). This has since changed. See U.S. Department of Housing and Urban Development, Home Equity Conversion Mortgage (HECM) Program: Non-Borrowing Spouse (2014) ("FHA has, since the inception of the HECM program, interpreted this provision in its regulations as requiring HECMs be called due and payable upon the death of the last surviving mortgagor . . . . FHA continues to believe that its original interpretation gives full force and effect to the intent of the statute. Nevertheless, recent events have advanced another possible interpretation . . . ."); Bennett v. Donovan, 4 F. Supp. 3d 5, 15 (D.D.C. 2013) ("HUD violated 12 U.S.C. § 1715z–20(j) when it insured the reverse mortgages of plaintiffs' spouses pursuant to agency regulation, which permitted their loan obligations to come due upon their death regardless of whether their spouses (plaintiffs) were still alive."). In 2006, there was no federal-mortgage-insurance reason for the bank to require Mrs. Palmero to sign the mortgage.

### 2. Borrower.

Even so, Mrs. Palmero contends, she was a borrower under the mortgage. Because the reverse mortgage limited foreclosure to when the property was "not the principle residence of at least one surviving Borrower," and Mrs. Palmero was a surviving borrower still living on the property, the argument goes, foreclosure was premature and judgment was properly granted for Mrs. Palmero.

As we noted earlier, the Palmeros signed a number of agreements as part of the reverse mortgage. Reading these documents together, as we must, <u>Sardon Found. v. New Horizons Serv. Dogs, Inc.</u>, 852 So. 2d 416, 420 (Fla. 5th DCA 2003) ("Where other instruments are executed contemporaneously with a mortgage and are part of the same transaction, the mortgage may be modified by these other instruments. All the documents should be read together to determine and give effect to the intention of the parties."), we agree with the trial court that Mrs. Palmero was not a borrower. The mortgage defined the borrower as Mr. Palmero, with a life estate to his wife and children. The note defined Mr. Palmero as the borrower. The loan agreement also defined Mr. Palmero as the borrower. The loan application from the closing listed Mr. Palmero as the borrower, and did not list any co-borrowers. Mrs. Palmero signed a "non-borrower spouse ownership interest certification" certifying "that should my spouse predecease me . . . and unless other means of repayment is obtained, the home where I reside may need to be sold to repay Reverse Mortgage debt incurred by my spouse. If the home where I reside is required to be resold, I understand that I may be required to move from my residence." To the extent there was any confusion or inconsistency in the mortgage, it was cleared up by the note, loan application, loan agreement, and non-borrower spouse certification, which unequivocally provided that Mrs. Palmero

was not the borrower for the reverse mortgage and defined Mr. Palmero as the borrower.

The dissenting opinion relies on our decisions in Smith and Edwards v. Reverse Mortgage Solutions, Inc., 187 So. 3d 895 (Fla. 3d DCA 2016), but the loan application, loan agreement, and non-borrower spouse certification distinguish those cases from this one. In Smith and Edwards, the court had a limited record, and didn't have these contemporaneously signed documents, when it decided that the surviving spouses in those cases were borrowers. In Smith, for example, there was no transcript of the trial, Smith, 200 So. 3d at 224 (noting "the absence of a transcript"), no title description, id. at 226 n.8 ("It is not clear from the record how the subject property was titled at the time the mortgage was executed by Mr. and Mrs. Smith."), and no loan application, id. at 223 n.1 ("While the subject note and mortgage both reference a 'Loan Agreement' . . . no Loan Agreement is contained in the record on appeal."). Because of this limited record, the Smith court intentionally limited its discussion to construction of the mortgage. Id. at 224 ("[T]he issue presented involves . . . judicial construction of the reverse mortgage . . . .").

In Edwards, the record was limited because the defendant defaulted by failing to appear after service and answer the complaint. Edwards, 187 So. 3d at 896. There was a nonjury trial, but the defendant was not allowed to testify and

11

was not permitted to assert any defenses. Id. The only loan documents before the trial court were the mortgage and note. Id. ("The trial court held that [the bank] was entitled to foreclosure because Mr. Edwards was the only borrower under the note, and therefore, the only borrower for purposes of the mortgage's acceleration provision.").

Because our record, unlike in Smith and Edwards, contains other contemporaneously signed agreements, we are required to read them together. See Quix Snaxx, Inc. v. Sorensen, 710 So. 2d 152, 153 (Fla. 3d DCA 1998) ("Documents executed by the same parties, on or near the same time, and concerning the same transaction or subject matter are generally construed together as a single contract."); Citicorp Real Estate, Inc. v. Ameripalms 6B GP, Inc., 633 So. 2d 47, 49 (Fla. 3d DCA 1994) ("The law is well established that two or more documents executed by the same parties, at or near the same time, and concerning the same transaction or subject matter are generally construed together as a single contract."); Bianchi's from Roma, Inc. v. Big Five Club, Inc., 630 So. 2d 642, 643 (Fla. 3d DCA 1994) ("[W]e conclude that a release which was signed simultaneously by the parties with the written agreement sued upon [thereby requiring that both of these instruments be construed together in determining the parties' intent] did not, as a matter of law, extinguish the parties' obligations to each other under the written agreement." (brackets in original)). We have done so

12

not in a lopsided way, as the dissenting opinion suggests, but in a way that is faithful to the parties' intent – by reading Mrs. Palmero's certification that she was not a borrower plainly to mean that she was not a borrower.  See Acceleration Nat. Serv. Corp. v. Brickell Fin. Servs. Motor Club, Inc., 541 So. 2d 738, 739 (Fla. 3d DCA 1989) ("[T]he actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls.").

*Conclusion*

We conclude that the trial court erred in granting judgment for Mrs. Palmero.  We reverse the judgment for Mrs. Palmero and remand for the trial court to enter judgment in favor of the bank.

Reversed and remanded with instructions.

EMAS, J., concurs.

13

3D14-3114 <u>OneWest v. Luisa Palmero</u>
(LOGUE, J. (dissenting)


The "reverse mortgage" at issue expressly provides it cannot be foreclosed upon until "the Property is not the principal residence of at least one surviving Borrower." It is undisputed that Mrs. Palmero signed the mortgage and continued to reside in her home after her husband died. The only open question is whether Mrs. Palmero signed the mortgage as a borrower. I believe the majority overlooks a simple fact on the face of the mortgage: that Mrs. Palmero did indeed sign as a borrower. It seems to me the question of whether a person signed a mortgage as a borrower can be answered by examining only the mortgage itself.

On the face of the mortgage, immediately above Mrs. Palmero's signature, the mortgage states "BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by

14

Borrower and recorded with it." The form provides a place for the borrowers to sign. Mrs. Palmero's signature appears in exactly that place reserved for the signature of the borrowers. There is no possible ambiguity in this regard. Were there any ambiguity, it is surely resolved by the fact that, immediately next to her signature is the printed word, "Borrower." Furthermore, this signature, "Luisa Palmero (Borrower)," is notarized.

The Bank does not deny these facts because it cannot. Instead, it attempts to downplay them by purporting to prove by testimony and other documents that the signature "Luisa Palmero (Borrower)" does not mean Mrs. Palmero signed as a borrower. The problem with the Bank's argument is that Mrs. Palmero did not sign as "Luisa Palmero (Borrower)" as a result of serendipity, mistake, or accident. Instead, as the repeated references to federal mortgage insurance in the mortgage clearly indicate, it was the Bank itself that required Mrs. Palmero to sign as a borrower so that the Bank could obtain federal mortgage insurance. The federal government will not insure this type of loan unless the spouse signs as a co-borrower. The purpose of this requirement is to protect the spouse from foreclosure as long as he or she resides in the home. See 12 U.S.C.A. § 1715z-20 (2017).

At best, therefore, the Bank's argument boils down to the proposition that Mrs. Palmero signed as a borrower for purposes of securing the Bank federal mortgage insurance, but not for providing Mrs. Palmero the protection from

foreclosure. This protection from foreclosure is the very reason why federal law requires her signature as a condition to obtain federal mortgage insurance. Were this a case of first impression, I would still decline to lend the imprimatur of our court to such a lopsided interpretation of a legal document. Indeed, the Bank's argument in this regard reminds me of the remark by Lily Tomlin: "No matter how cynical you become, it's never enough to keep up."

In any event, whatever its theoretical merits, the Bank's argument in this regard has already been expressly rejected by this court twice. In Smith v. Reverse Mortgage Solutions, Inc., 200 So. 3d 221 (Fla. 3d DCA 2016), this court considered the identical issue when interpreting a spouse's similar signature on an identical mortgage. We held that the issue was purely an issue of law to be determined by examining only the mortgage. As we specifically stated, "the issue presented involves a pure question of law . . . i.e., judicial construction of the reverse mortgage to determine whether Mrs. Smith is a 'Borrower' as defined in the reverse mortgage." Id. at 224. After reviewing the language of the mortgage, the Florida Constitution, and federal housing statutes, the panel concluded "that, as a pure question of law, Mrs. Smith was a 'Borrower' as that term is contemplated in Paragraph 9 . . . of the subject reverse mortgage." Id. at 228.

Later, our court approved and followed this holding in Edwards v. Reverse Mortgage Solutions, Inc., 187 So. 3d 895, 897 (Fla. 3d DCA 2016) (adhering to

<u>Smith</u> and agreeing that "it would be difficult, if not impossible, for us to construe [the surviving spouse] as anything other than a 'Borrower'").

Because the mortgage and the nature of the spouse's signature in this case are identical to the ones in <u>Smith</u> and <u>Edwards</u>, we are bound by our rather unremarkable precedent that, as a matter of law, when the surviving spouse signed the mortgage as a borrower, as revealed by an examination of the mortgage itself, the spouse will be treated as a borrower for purposes of the mortgage. <u>Smith</u>, 200 So. 3d at 228; <u>Edwards</u>, 187 So. 3d at 897. I therefore respectfully dissent. Mrs. Palmero is entitled to stay and live in her home.