# Supreme Court of Florida

————————

No. SC19-1920
————————

**WVMF FUNDING, AS SUCCESSOR TO ONEWEST BANK, FSB,**
Petitioner,

vs.

**LUISA PALMERO, et al.,**
Respondents.

June 24, 2021

LAWSON, J.

The decision on review presents the legal questions of whether, in a foreclosure action, the terms of the mortgage and note must be construed together and, if so, in the event of a conflict between the two documents, which prevails. We answered both of these questions long ago, holding that the mortgage must be read alongside the note it secures and that the note prevails in the event of a conflict. *See Graham v. Fitts*, 43 So. 512, 513-14 (Fla. 1907) (requiring joint construction of note and mortgage in foreclosure actions); *Hotel Mgmt. Co. v. Krickl*, 158 So. 118, 119 (Fla. 1934)

(setting forth the "general rule" for foreclosure actions that "if there is a conflict between the terms of a note and mortgage, the note should prevail"). Because the Third District Court of Appeal in *OneWest Bank, FSB v. Palmero,* 283 So. 3d 346 (Fla. 3d DCA 2019), failed to follow our precedent and instead looked solely at the location of a signature on a mortgage to hold that the term "Borrower" means something different than both the mortgage and the note define it to mean, we granted review based on express and direct conflict with our decisions in *Graham* and *Krickl, see* art. V, § 3(b)(3), Fla. Const., and now quash the Third District's decision.

## BACKGROUND

Roberto Palmero and his wife, Respondent Luisa Palmero, initially applied as co-borrowers for a loan that was to be secured by a reverse mortgage on their primary residence and homestead. *See Palmero,* 283 So. 3d at 347. Several months later, however, the Palmeros changed course, and Mr. Palmero applied for the same type of loan, only this time, as the sole borrower. *See id.*[1]

---

1. "[B]ecause Mr. Palmero was the *only* borrower under the terms of the loan agreement, he qualified for—and received—a higher amount than would have been paid had Mrs. Palmero been a

- 2 -

Five documents relate to Mr. Palmero's loan: (1) a residential loan application; (2) a home equity conversion loan agreement; (3) an adjustable rate note; (4) a non-borrower spouse ownership interest certification; and (5) a reverse mortgage. *See id.* at 347-48; *see also id.* at 356-57 (Emas, C.J., dissenting).

The first three documents, all signed on the same date, identified Mr. Palmero as the sole borrower and were signed only by him. *Id.* at 347. Of these three documents, the note is of primary importance, and it defines "Borrower" as "each person signing at the end of this Note." *Id.* at 357 (Emas, C.J., dissenting). Mr. Palmero is the only person whose signature appears at the end of the note. *Id.* (Emas, C.J., dissenting).

Both Mr. and Mrs. Palmero signed the fourth document, the non-borrower spouse ownership interest certification. *Id.* at 348. Although the date on the certification is illegible, like the three documents signed solely by Mr. Palmero, the certification identified Mr. Palmero as the borrower. *Id.* at 357 (Emas, C.J., dissenting).

---

co-borrower." *Palmero*, 283 So. 3d at 357 n.14 (Emas, C.J., dissenting).

The certificate also identified Mrs. Palmero as the "Non-Borrower Spouse." *Id.* at 348.

Finally, to secure the note, Mr. and Mrs. Palmero both executed the fifth document, the reverse mortgage. *Id.* at 347. The mortgage bears the same date as the note, and it expressly refers to the note, including defining the mortgage as a "Security Instrument" given to "secure[] to Lender . . . the repayment of the debt evidenced by the Note." Consistent with the other documents, the mortgage defined the "Borrower" as "Roberto Palmero, a married man." *Id.* at 348. The signature block of the mortgage provided that "BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it." *Id.* at 357 (Emas, C.J., dissenting). Both Mr. *and* Mrs. Palmero signed their names on lines beneath this sentence that were preprinted with their names and the word "Borrower." *Id.* at 348.

As with a typical reverse-mortgage loan, certain events would trigger acceleration of the debt prior to the repayment date identified in the note and mortgage. *See generally Estate of Jones v. Live Well Fin., Inc.*, 902 F.3d 1337, 1338-39 (11th Cir. 2018)

(explaining reverse-mortgage loans).  As relevant here, the triggering event was Mr. Palmero's death.  *See Palmero*, 283 So. 3d at 349.

Following Mr. Palmero's death, when his estate did not repay the loan, Petitioner's predecessor, OneWest Bank, FSB (OneWest), sought to foreclose the mortgage that secured the loan.  *Id.* Respondents, Mrs. Palmero and her two adult children, defended against the foreclosure action by arguing that Mrs. Palmero, who continued to principally reside in the mortgaged property, was a co-borrower under the mortgage.  *Id.*  Mrs. Palmero's status (or not) as a co-borrower was critical because both the note and mortgage conditioned enforcement of the debt on the following: "A Borrower dies and the [mortgaged] Property is not the principal residence of at least one surviving Borrower."  *Id.* at 364 n.23 (Miller, J., dissenting).

Following a bench trial, the trial court ruled that Mrs. Palmero was not a co-borrower.  *Id.* at 350.  However, it denied foreclosure based on a federal statute that governs the insurability of reverse mortgages by the Secretary of the Department of Housing and Urban Development.  *See id.* (citing 12 U.S.C. § 1715z-20(j)).

On appeal, the Third District held, on rehearing en banc, that the trial court erred by relying on the federal statute to deny foreclosure because the statute's application "was neither raised as an affirmative defense . . . nor litigated by the consent of the parties at the bench trial." *Id.* However, the Third District disagreed with the trial court's factual finding that Mrs. Palmero was not a co-borrower, ruling instead that, "as a matter of law," *id.* at 350, the mortgage unambiguously defined her as a "Borrower." *See id.* at 350-52. Accordingly, the Third District affirmed the trial court's denial of foreclosure based on its conclusion that "OneWest failed to establish the occurrence of a condition precedent to its right to foreclose, i.e., that the subject property is not the principal residence of Mrs. Palmero, a surviving co-borrower under the instant reverse mortgage." *Id.* at 347.

In support of its holding, the Third District relied on its prior decisions in *Smith v. Reverse Mortgage Solutions, Inc.*, 200 So. 3d 221 (Fla. 3d DCA 2016), and *Edwards v. Reverse Mortgage Solutions, Inc.*, 187 So. 3d 895 (Fla. 3d DCA 2016), where the district court had "considered reverse mortgages identical to the [Palmeros'] reverse mortgage and determined that, as a matter of

- 6 -

law, the surviving spouse is a co-borrower." *Palmero*, 283 So. 3d at 353 (emphasis omitted). The Third District looked to these prior decisions to construe the loan documents at issue over strong dissents arguing that the court should instead apply longstanding foreclosure precedent that governs the construction of notes and mortgages. *See id.* at 361 (Emas, C.J., dissenting) (identifying, among other failings in the majority's decision, that it "ignores the fact that the contemporaneously executed note contains only Mr. Palmero's name and signature as borrower"); *see also id.* at 362 (Miller, J., dissenting) ("[I]n addition to failing to mutually construe the contemporaneously executed documents, the majority dispenses with a body of well-reasoned, established jurisprudence, the controlling provisions of the promissory note, and the express terms of the mortgage in determining that the inclusion of Mrs. Palmero's unnotarized signature on the mortgage renders her a 'Borrower,' as a matter of law.").

We accepted jurisdiction to resolve the express and direct conflict between the Third District's decision and our decisions in *Graham* and *Krickl*. *See* art. V, § 3(b)(3), Fla. Const.

## ANALYSIS

We review de novo the Third District's legal conclusion that Mrs. Palmero is a co-borrower. *See Bank of New York Mellon v. Withum*, 204 So. 3d 136, 137 (Fla. 4th DCA 2016) ("[C]onstruction of notes and mortgages are pure questions of law subject to de novo review."). Because proper application of our precedent establishes that she is not, we quash the district court's decision.[2]

Over one hundred years ago, we explained why, in foreclosure actions, the general rule is that a mortgage should be construed together with the note that it secures:

> The note and mortgage were executed at the same time in one transaction relating to the same subject, and the mortgage refers to the note. Therefore they should be

---

2. Although the parties and the dissent also raise arguments regarding the federal insurability statute, we exercise our discretion not to reach them, as they were not properly litigated in the trial court and are not controlling of the jurisdictional issue. *See Savoie v. State*, 422 So. 2d 308, 312 (Fla. 1982) ("[A]uthority to consider issues other than those upon which jurisdiction is based is discretionary with this Court and should be exercised only when these other issues have been properly briefed and argued."); *see also Estate of Jones*, 902 F.3d at 1341-42 (explaining that the "plain language" of 12 U.S.C. § 1715z-20(j) "applies only to HUD and speaks only to what the Secretary can and cannot do" in terms of insuring mortgages and concluding that because the statute "says nothing about private contractual obligations one way or the other, . . . [it] cannot be read to alter or affect the enforceability of the mortgage contract or its terms").

considered together in determining their meaning and effect. By construing them together as parts of one contract, the provisions of the principal note as to when it shall become due and payable, when taken with the provision of the mortgage that it is given to secure the payment of the note, with interest, "according to the true intent and meaning of said note," it is clear that the provisions of the note control. The note constitutes the written evidence of the indebtedness, and the terms of its payment are stated therein. The mortgage was given to secure the payment "according to the true intent and meaning of the note."

*Graham*, 43 So. at 513-14 (citations omitted); *see also Flinn v. Lisenby*, 136 So. 599, 601 (Fla. 1931) ("The note and mortgage was a single contract and therefore must be read and construed together.").

We have also long explained that "[t]he general rule is that, if there is a conflict between the terms of a note and mortgage, the note should prevail. Effect should be given to both however, where there is no actual or necessary conflict." *Krickl*, 158 So. at 119 (citation omitted).

Here, both the mortgage and the note expressly define Mr. Palmero as the "Borrower." It is true that Mrs. Palmero also joined in the mortgage—as would have been required for the lender to have a valid security interest because the mortgaged property was

her homestead, *see* art. X, § 4(c), Fla. Const.—and that she did so by signing her name in the "Borrower" signature block. However, contrary to the Third District's holding, the location of Mrs. Palmero's signature on the mortgage did not unambiguously and as a matter of law, *see Palmero*, 283 So. 3d at 352, make her a co-borrower under the mortgage.

The Third District's holding ignores not only that the mortgage expressly defines Mr. Palmero as the "Borrower," but it also ignores that this Court's foreclosure precedent requires courts to read the mortgage together with the note it secures, *see Graham*, 43 So. at 513-14, and to look to the note to resolve any conflict, *see Krickl*, 158 So. at 119. As Judge Miller cogently explained in her dissent below, applying our precedent, the location of Mrs. Palmero's signature on the mortgage

> cannot be used to circumvent unambiguous, bargained-for contractual language. Mr. Palmero was the sole defined "Borrower" under both the note and mortgage. Moreover, as the note and mortgage must be harmonized to effect the intent of the parties, and any purported conflicts between the note and mortgage should be resolved in favor of the note, . . . Mr. Palmero was the sole "Borrower," and upon his death, the lender was entitled to foreclose.

*Palmero*, 283 So. 3d at 366 (Miller, J., dissenting).

Because the note—which defines Mr. Palmero and only Mr. Palmero as the "Borrower"—resolves any conflict created by Mrs. Palmero's signing her name in the "Borrower" signature block of the mortgage, we need not look beyond (and it was unnecessary for the trial court to look beyond) the note and mortgage to the other documents that were part of the same transaction to determine, as a matter of law, how the parties intended to define the term "Borrower." *See generally Sardon Found. v. New Horizons Serv. Dogs, Inc.*, 852 So. 2d 416, 417, 420 (Fla. 5th DCA 2003) (explaining that "[t]he primary rule of construction of a mortgage is to ascertain the intention of the parties" and that "[w]here other instruments are executed contemporaneously with a mortgage and are part of the same transaction, the mortgage may be modified by these other instruments").[3] We do note, however, that *all* of the

---

3. Similarly, because the proper application of our foreclosure precedent resolves any conflict between the mortgage and the note as a matter of law, we reject Respondents' argument that we should construe any ambiguity against the lender as the drafter. *See Emerald Pointe Prop. Owners' Ass'n v. Com. Constr. Indus., Inc.*, 978 So. 2d 873, 878 n.1 (Fla. 4th DCA 2008) ("[T]he rule of adverse construction is a 'secondary rule of interpretation' or a 'rule of last resort,' which should not be utilized if the parties' intent can otherwise be conclusively determined.").

other documents consistently show that the parties intended for Mr. Palmero to be the sole "Borrower," and the record shows that Mr. Palmero "qualified for—and received—a higher amount than would have been paid had Mrs. Palmero been a co-borrower." *Palmero,* 283 So. 3d at 357 n.14 (Emas, C.J., dissenting).[4]

Finally, the Respondents argue and the dissent concludes that our precedent involves traditional mortgages and therefore should not apply to the reverse mortgage at issue here. However, first principles—i.e., the reason for the documents at issue—tell us why we should read a mortgage together with the note it secures regardless of the type of mortgage being foreclosed: "[T]he promissory note, not the mortgage, is the operative instrument in a mortgage loan transaction, since 'a mortgage is but an incident to the debt, the payment of which it secures, and its ownership follows the assignment of the debt.'" *HSBC Bank USA, N.A. v. Perez,* 165

---

4. Indeed, although we apply our precedent to resolve the issue as a matter of law, as Chief Judge Emas pointed out in his dissent below, after having held a bench trial on the issue of whether Mrs. Palmero is a co-borrower, the trial court made a factual finding, which is supported by competent, substantial evidence, that she is not. *See Palmero,* 283 So. 3d at 356, 360-61 (Emas, C.J., dissenting).

So. 3d 696, 699 (Fla. 4th DCA 2015) (quoting *WM Specialty Mortg., LLC v. Salomon*, 874 So. 2d 680, 682 (Fla. 4th DCA 2004)); *see also Palmero*, 283 So. 3d at 363 (Miller, J., dissenting) ("The note represents a promise to pay, while the mortgage merely secures that promise in the event of a default.").

## CONCLUSION

Our foreclosure precedent is clear that the mortgage must be read together with the note it secures and that, if the terms of the two documents conflict, the note prevails. *See, e.g.*, *Graham*, 43 So. at 513-14; *Krickl*, 158 So. at 119. Applying our precedent to the mortgage and note in this foreclosure case, Mr. Palmero was the sole borrower as a matter of law. Accordingly, because the Third District erred in affirming the trial court's denial of foreclosure on the ground that, as a matter of law, Mrs. Palmero is a surviving co-borrower, we quash its decision in *Palmero*. We also disapprove the Third District's prior decisions in *Smith* and *Edwards* to the extent they are inconsistent with this opinion.

It is so ordered.

CANADY, C.J., and MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.
LABARGA, J., dissents with an opinion, in which POLSTON, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., dissenting.

I respectfully disagree with the majority's conclusion that Mr. Palmero was the sole borrower as a matter of law. While I agree that, under both *Graham* and *Krickl*, the note prevails in the conventional mortgage context, there is no authority requiring the same result in the reverse mortgage context. In relying on *Graham* and *Krickl*, the majority looks to nearly one-hundred-year-old precedent which undoubtedly does not consider the intricacies of reverse mortgages, nor the incentives for the parties involved. Moreover, because *Graham* and *Krickl* are not reverse mortgage cases, they do not involve the same federal law concerns under 12 U.S.C. § 1715z-20(j). Accordingly, I do not view this Court's decisions in *Graham* and *Krickl* as determinative in the present case.

The majority correctly states that the note is the operative instrument in a loan transaction. Majority op. at 12. However,

- 14 -

conventional mortgages are distinguishable from reverse mortgages because no personal liability is attached to a borrower in a reverse mortgage. Accordingly, in a conventional mortgage the note is the primary instrument, whereas in a reverse mortgage the mortgage is the primary instrument. Because conventional mortgages and reverse mortgages are distinguishable, I do not believe that this Court should so heavily rely on outdated case law governing conventional mortgages.

The Third District has performed a thoughtful legal analysis for this same legal issue twice before in *Smith* and *Edwards*, holding that, as a matter of law, when the surviving spouse signs a mortgage as a co-borrower, the spouse will be treated as a borrower for purposes of the mortgage. *Smith*, 200 So. 3d at 228; *Edwards*, 187 So. 3d at 897. In the present case, the reverse mortgage was signed by both Mr. and Mrs. Palmero, suggesting that Mrs. Palmero is a co-borrower.

I do not disagree with the conclusion in *Graham*, that a mortgage should be construed together with the note it secures. *See Graham*, 43 So. at 513-14. However, given the intricacies of reverse mortgages which did not exist when *Graham* was decided,

this Court should look beyond legal principles used in conventional mortgages in a reverse mortgage analysis. Here, for instance, in order to ensure that Mrs. Palmero would not invoke a homestead claim to the mortgaged property as a defense to foreclosure, her signature on the mortgage was necessary. This suggests that the parties intended for Mrs. Palmero to sign as a co-borrower to be in compliance with the homestead provisions of the Florida Constitution. Furthermore, federal law expressly prohibits insuring any mortgage that would allow the lender to commence a foreclosure on the property while the non-borrowing spouse of the borrower remains alive and in possession. 12 U.S.C. § 1715z-20(j) (2017). The purpose of this requirement is to protect the spouse from foreclosure as long as the spouse resides in the home. *See Edwards*, 187 So. 3d at 897. Therefore, if this Court interprets the contractual obligations of the parties as consistent with the federal regulations governing the contract at the time it was entered into, then Mrs. Palmero would be a co-borrower. I do not see any other reason for Mrs. Palmero to sign the mortgage if she did not intend to be a co-borrower.

Because I believe Mrs. Palmero is a co-borrower under the terms of the mortgage and that she should prevail because a condition precedent to the lender's right to foreclose has not occurred, I dissent.

POLSTON, J., concurs.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

Third District - Case No. 3D14-3114

(Miami-Dade County)

William P. McCaughan of Law Office of William P. McCaughan, Key Biscayne, Florida; Joshua H. Threadcraft of Burr & Forman LLP, Birmingham, Alabama; and Jonathan B. Morton, Mallory M. Cooney, and Joshua C. Carpenter of K & L Gates LLP, Miami, Florida,

for Petitioner

Jeffrey M. Hearne and Maxine M. Long of Legal Services of Greater Miami, Inc., Miami, Florida; Jacqueline C. Ledón of J. Muir & Associates, P.A., Miami, Florida; and Juan M. Carrera of Carrera & Amador, P.A., Miami, Florida,

for Respondents

Lynn Drysdale of Jacksonville Area Legal Aid, Inc., Jacksonville, Florida; and Julie Nepveu of AARP Foundation, Washington, District of Columbia,

for Amici Curiae AARP, AARP Foundation, and Jacksonville Area Legal Aid, Inc.